IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WINK HAYES,

    Plaintiff,

v.                                                                                     Civil Action No. **3:12CV427**

J. BOONE, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Wink Hayes, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983.[1] In his Amended Complaint (ECF No. 22), Hayes names as defendants: J. Boone, the former Assistant Warden at Greensville Correctional Center ("GCC"); Ralph Abernathy, the Food Service Director; Wendy Hobbs, the Regional Administrator; and the Commonwealth of Virginia. Hayes "is a sincere believer in the religion of Islam as taught by the Honorable Elijah Muhammad ...." (Am. Comp. ¶ 2.) Hayes's claims concern the religious celebration of Ramadan in 2011 when, due to Hurricane Irene, the Defendants temporarily ceased to provide Hayes with his religiously prescribed diet. (*See id.* ¶¶ 6–11.) Specifically, Hayes raises the following grounds for relief:

    Claim One    "Defendants Boone, Abernathy, and Hobbs ... violated Plaintiff's right to practice his religion by suspending his Common Fare Diet during his

---

[1] That statute provides, in pertinent part:

    Every person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

42 U.S.C. § 1983.

observance of the 2011 Ramadan ... in violation of the First Amendment.[2]" (*Id.* at 2 (emphasis omitted).)

Claim Two "Defendants, Boone, Abernathy, and Hobbs unlawfully discriminated against Plaintiff because of his religion, in violation of the Fourteenth Amendment.[3]" (*Id.* at 4 (emphasis omitted).)

Claim Three Plaintiff is entitled to compensation from the Commonwealth of Virginia under the Virginia Tort Claims Act.[4]

Defendants have moved for summary judgment. Hayes has not responded. For the reasons set forth below the Motion for Summary Judgment (ECF No. 25) will be GRANTED.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond

---

[2] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I.

[3] "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[4] "[T]he Commonwealth shall be liable for claims for money ... on account of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment" Va. Code Ann. § 8.01-195.3 (West 2013).

the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In support of their Motion for Summary Judgment, Defendants submit the affidavit of J. Boone. (ECF No. 26–1 ("Boone Aff.").) Defendants' Motion for Summary Judgment contains a statement of undisputed facts as required by Local Rule 56(B).[5] Hayes failed to respond to the Motion for Summary Judgment. In accordance with Local Rule 56(B), because Hayes failed to oppose the Motion for Summary Judgment, the Court presumes that Hayes admits the facts listed in the statement of undisputed facts (Mem. Supp. Mot. Summ. J. 2–3). E.D. Va. Loc. Civ. R. 56(B).

## II. UNDISPUTED FACTS

During all times pertinent to this action, Hayes was housed at GCC. (Am. Compl. ¶ 1.) "In August 2011, the Central Virginia area was heavily affected by Hurricane Irene." (Boone Aff. ¶ 5.) Due to the hurricane, the Virginia Department of Corrections (VDOC) had to evacuate Indian Creek Correctional Center ("ICCC") and move the inmates to GCC. (*Id.*) As a result of

---

[5] That rule provides:

> Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, *the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.*

E.D. Va. Loc. Civ. R. 56(B) (emphasis added).

the evacuation, the VDOC housed over nine hundred offenders from ICCC at GCC. (*Id.*) "Several of these offenders were also participating in the Ramadan fasting and Common Fare menu." (*Id.*)

GCC officials could not provide the Common Fare diet to all demanding offenders during this emergency situation:

> The Common Fare menu requires a large amount of fresh produce to be delivered weekly. As a result of the influx of offenders, all Common Fare meals were temporarily suspended as [GCC] did not have enough food supplies to supply the Common Fare menu during the hurricane evacuation to all participating offenders. Additionally, the Common Fare menu had to use separate utensils, trays etc. and [GCC] did not have enough separate trays to prepare the religious diet. The Common Fare menu was reinstated when [GCC] returned to normal operations and all ICCC offenders were returned to ICCC.

(*Id.*)

### III. ANALYSIS

#### A. First Amendment

Defendants do not dispute that the temporary failure to provide Hayes with the Common Fare Diet substantially burdened Hayes in the free exercise of his religion. Defendants, however, contend their actions pass constitutional muster because such actions were reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In assessing whether a regulation or managerial decision is reasonable, courts consider (1) whether a "valid, rational connection [exists] between the prison regulation [or managerial decision] and the legitimate governmental interest put forward to justify it," (2) whether "alternative means of exercising the right [exist] that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether an "absence of ready alternatives" to the regulation or

4

managerial decision in question exists. *Turner*, 482 U.S. at 89–90 (citations omitted) (internal quotation marks omitted); *see O'Lone*, 482 U.S. at 350–52. Significantly, in conducting this inquiry, "[t]he burden, moreover, is not on the State to prove the validity of prison regulations [or managerial decisions] but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citing *Shaw v. Murphy*, 532 U.S. 223, 232 (2001); *O'Lone*, 482 U.S. at 350; *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977)).

The decision to temporarily suspend the Common Fare Diet at GCC was driven by emergency circumstances that prevented officials from providing such a diet for the additional inmates required to be temporarily housed at GCC. Therefore, the first *Turner* factor favors Defendants. The second factor also favors Defendants. Other than his diet, no evidence exists that Hayes's ability to practice his religion by prayer, study, congregational worship, et cetera was impaired during the temporary suspension of the Common Fare Diet. Finally, the last two factors are neutral or favor Defendants. According to Defendants, "the Common Fare diet requires a weekly delivery of fresh produce and separate utensils and trays. . . . [With] an influx of over nine hundred offenders, they did not have enough fresh produce and special utensils/trays to accommodate the extra offenders who were participating in Ramadan." (Mem. Supp. Mot. Summ. J. 4–5.) No evidence exists that, in the emergency circumstances following Hurricane Irene, Defendants could have fully accommodated all of the inmates who desired the Common Fare Diet. Of course, as an alternative to the total suspension of the Common Fare Diet, Defendants could simply have chosen to use the supplies on hand to provide the Common Fare diet to some desiring inmates, such as Hayes, and not others. Nevertheless, given the animosity such a practice could easily engender in the excluded inmates, Defendants could easily have concluded that a complete suspension of the diet would promote greater institutional security.

As Defendants' temporary suspension of Common Fare Diet was rationally related to legitimate penological interests, Claim One will be DISMISSED.

### B. Equal Protection

In order for Hayes's equal protection claim to survive summary judgment, Hayes must demonstrate that Defendants "treated [him] differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Hayes fails to submit any evidence demonstrating either unequal treatment or intentional discrimination. Accordingly, Claim Two will be DISMISSED.

### C. Virginia Tort Claims Act

Defendants contend that Hayes failed to comply with the notice provisions of the Virginia Tort Claims Act. (Mem. Supp. Mot. Summ. J. (citing Va. Code 8.01–195.6).) The pertinent portion of the statue provides:

> Every claim cognizable against the Commonwealth or a transportation district shall be forever barred unless the claimant or his agent, attorney or representative has filed a written statement of the nature of the claim ["notice of claim"], which includes the time and place at which the injury is alleged to have occurred and the agency or agencies alleged to be liable, within one year after such cause of action accrued.

Va. Code Ann. § 8.01–195.6(A) (West 2013). Hayes's claims arise from the temporary suspension of the Common Fare diet between August 26, 2011 and August 30, 2011. (Am. Compl 3.) Hayes fails to demonstrate that he filed a notice of claim within one year of August 30, 2011. Accordingly, Claim Three will be DISMISSED.

6

## IV. CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 25) will be GRANTED. The action will be DISMISSED.

An appropriate Final Order will accompany this Memorandum Opinion.

/s/
John A. Gibney, Jr.
United States District Judge

Date: 5/14/14
Richmond, Virginia